IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLAUDETTE SANDERS,                              No. 3:16-cv-01974-HZ

       Plaintiff,                              OPINION & ORDER

   v.

CONCORDE CAREER COLLEGES, INC.,
and COMPUTER CAREER INSTITUTE,
INC.,

       Defendants.

Beth Creighton
Creighton & Rose, PC
65 SW Yamhill St., Ste. 300
Portland, Oregon 97204

    Attorney for Plaintiff

//

OPINION & ORDER - 1

Patrick C. Wylie
Davis Rothwell Earle & Xochihua P.C
200 Southwest Market Street, Suite 1800
Portland, Oregon 97201

Bryce A. Young
Edward M. Cramp
Duane Morris LLP
750 B Street, Suite 2900
San Diego, California 92101

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      Plaintiff Claudette Sanders brings this action against Concorde Career Colleges, Inc.

("Concorde") and Computer Career Institute, Inc., alleging violations of her civil rights under 42

U.S.C. § 2000d and Oregon state law. Specifically, Plaintiff alleges that Concorde discriminated

against her on the basis of her race and retaliated against her for reporting racial discrimination.

Before the Court is Defendants' motion to compel arbitration. ECF 11. The motion is

GRANTED.

BACKGROUND

      Plaintiff, an African American female, enrolled in Concorde's Surgical Technology

program ("the Program") on June 18, 2014. Plaintiff enrolled in the program by signing an

Enrollment Agreement ("2014 Enrollment Agreement"). Ierien Decl. ¶ 7, Ex. A, ECF 13. The

2014 Enrollment Agreement included an arbitration provision stating that:

> Any dispute arising from enrollment at Concorde Career College,
> no matter how described, pleaded or styled, shall be resolved by
> binding arbitration under the Federal Arbitration Act conducted by
> the American Arbitration Association ("AAA") at Portland,
> Oregon, under its Commercial Rules. The award rendered by the
> arbitrator may be entered in any court having jurisdiction.

OPINION & ORDER - 2

*Id.* Ex. A at 1. Plaintiff alleges that during her 2014 enrollment in the Program, she was subject to race discrimination. Compl. ¶¶ 8–16. Plaintiff was withdrawn from the Program in May of 2015, allegedly for unsatisfactory academic performance. Ierien Decl. ¶ 9. In July of 2015, Plaintiff reported her concerns regarding race discrimination to Concorde's dean and to Defendants' campus president Kim Ierien. Compl. ¶¶ 18–20. In December of 2015, Plaintiff also reported race discrimination to Defendants' student affairs advisor. *Id.* at ¶ 21.

Plaintiff reenrolled in the Program on December 1, 2015. Ierien Decl. Ex. B at 1. As part of her reenrollment, Plaintiff signed a second Enrollment Agreement ("2015 Enrollment Agreement"). *Id.* The 2015 Enrollment Agreement was filled out electronically and signed electronically. *Id.*; Ierien Reply Decl. ¶5, Ex. D, ECF 25. Prior to signing the 2015 Enrollment Agreement, Plaintiff also signed an Electronic Signature and Consent Form, making her electronic signature binding. Ierien Reply Decl. Ex. D. The 2015 Enrollment Agreement also contained an arbitration provision identical to the one in the 2014 Enrollment Agreement. Ierien Decl. Ex. B at 1.

Plaintiff alleges that Defendants' racial discrimination continued during her second enrollment in the Program. Compl. ¶¶ 23–25. For the second time, Plaintiff was withdrawn from the Program for unsatisfactory academic performance. Ierien Decl. ¶ 12. Plaintiff reported race discrimination to Defendants' corporate office and appealed her expulsion from the Program. Compl. ¶¶ 28–31. Her appeal was denied and on May 31, 2016, Plaintiff filed a complaint with the Bureau of Labor and Industries alleging unlawful discrimination. *Id.* ¶¶ 32–33. Ultimately, Plaintiff was invited back to the Program on the condition that she sign a third Enrollment Agreement ("2016 Enrollment Agreement") and a separate Arbitration Agreement. Ierien Decl.

¶¶ 13–14, Ex. C; Sanders Decl. ¶ 9, Ex. 1, ECF 24. Plaintiff refused to sign the paperwork and as a result Defendants refused to re-admit her to the Program. *Id.* ¶ 11.

On October 11, 2016, Plaintiff filed her Complaint in this Court alleging four separate counts of race discrimination and retaliation against Defendants under Federal and state law. Plaintiff refused Defendants' request to withdraw her Complaint and submit the parties' dispute to arbitration. Young Decl. ¶¶ 2–4, Exs. A & B. Defendants then filed a motion to compel arbitration arguing that this Court should dismiss Plaintiff's Complaint and enforce the arbitration provisions contained in the 2014 and 2015 Enrollment Agreements.

STANDARDS

Defendant asserts and Plaintiff does not contest that Rule 12(b)(1) applies to motions to dismiss based on arbitration. The Court recognizes, however, that courts are divided as to whether a court's authority to dismiss under these circumstances stems from Rules 12(b)(1), (b)(3), or (b)(6).[1] For purposes this Motion, whether a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction or a Rule 12(b)(6) motion to dismiss for failure to state a claim applies does not change this Court's decision. Under either Rule, the Court can review the extrinsic documents submitted by the parties. In considering a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). Under Rule 12(b)(6), the district court "may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint

---

[1] *See, e.g., Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 (7th Cir. 2005) (recognizing disagreement among courts). Several courts in this district, including this Court, have granted motions to dismiss actions pursuant to Rule 12(b)(1). *See, e.g., Riso, Inc. v. Witt Co.*, No. 03:13-CV-02064-HZ, 2014 WL 3371731, at *4 (D. Or. July 9, 2014). Upon further review of this issue, the Court concludes that it may be more appropriate to invoke Rule 12(b)(6). *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (upholding district court's use of Rule(b)(6) to dismiss plaintiff's claim because of a valid and enforceable arbitration clause).

necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), as amended (July 28, 1998).

The Federal Arbitration Act ("FAA"), states that written agreements to arbitrate arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If the issue is referable to arbitration under the agreement, then the court must direct the issue to arbitration and stay the trial. 9 U.S.C. § 3. An agreement to arbitrate is to be "rigorously enforce[d.]" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

Courts strongly favor arbitration and broadly construe arbitration clauses. *E.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (internal quotation marks omitted); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high.").

As Judge Stewart explained in a 2010 opinion:

> The court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.

*Morrow Equip. Co., v. Baker Concrete Constr., Inc.*, No. 03:09–cv–1335–ST, 2010 WL 4483914, at *4 (D. Or. June 8, 2010) (internal quotation marks omitted), adopted by J. Haggerty (D. Or. Nov. 1, 2010).

## DISCUSSION

Defendants argue that Plaintiff's Enrollment Agreements are valid and binding and that her claims are within the scope of the arbitration provision. Plaintiff makes two arguments in

response: (1) that no contract to arbitrate exists; and (2) if one does exist, it is unenforceable on unconscionability grounds.

## I.    Arbitration Agreements

As to the 2014 Enrollment Agreement, Plaintiff argues that the document is ambiguous and no part of it indicates that she agreed to submit her disputes to arbitration. Plaintiff's position is untenable in light of the plain language of the 2014 Enrollment agreement, which she concedes that she signed. Ierien Decl. Ex. A at 1. As quoted above, the 2014 Enrollment Agreement contained an arbitration provision unambiguously stating that "[a]ny dispute arising from enrollment . . . shall be resolved by binding arbitration." *Id.* The Court finds that the 2014 Enrollment Agreement is valid and its arbitration provision is enforceable.

As to the 2015 Enrollment Agreement, Plaintiff takes the position that she never signed that document because it was electronically filled out. Here too, Plaintiff's position is contradicted by the record. Plaintiff signed the Electronic Signature and Consent Form prior to electronically signing the 2015 Enrollment Agreement. Under Oregon law, Plaintiff's electronic signatures are binding upon her. *See* Or. Rev. Stat. §§ 84.019(1); 84.025. Accordingly, the Court finds that the 2015 Enrollment Agreement is valid and its arbitration provision is also enforceable.

The next question is whether the arbitration provision encompasses Plaintiff's dispute. In this case, Plaintiff's claims as alleged in the Complaint arise from her enrollment with Defendants. Plaintiff alleges that she was discriminated against while enrolled with Defendants. Plaintiff argues that she was no longer "enrolled" because she was "kicked out" by Concorde, which effectively terminated the Enrollment Agreement. Pl. Resp. at 3, ECF 22. The Court agrees with Defendants that the plain language of the Enrollment Agreements states that the

arbitration provision applies to any dispute arising out of Plaintiff's enrollment. Reply. at 3, ECF 25. More broadly, Plaintiff's status as a former student does not invalidate the arbitration provision of the Enrollment Agreements. Arbitration provisions, by their nature, are routinely enforced between parties whose previous relationships have ended. *See Zieber v. BLB Resources, Inc.*, 839 F.3d 814, 816–21 (9th Cir. 2016). In sum, the parties had valid arbitration agreements and Plaintiff's claims as stated in her Complaint are encompassed by those agreements and are therefore arbitrable.

## II.    Unconscionability

Plaintiff argues that the contract law doctrine of unconscionability invalidates the Enrollment Agreements. The Enrollment Agreements, like other contracts, may be invalidated on equitable grounds including unconscionability. 9 U.S.C. § 2. Under Oregon law, unconscionability may be procedural or substantive. *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 566, 152 P.3d 940, 948 (2007). Procedural unconscionability focuses on whether the parties' unequal bargaining power is oppressive and whether the party claiming unconscionability was surprised by hidden terms of the agreement. *Id.* Substantive unconscionability focuses on the one-sided nature of the terms of the contract. *Id.* at 567, 152 P.3d at 948.

### A.    *Procedural Unconscionability*

Plaintiff argues that due to the parties' unequal bargaining power and the "take-it-or-leave-it basis" for the Enrollment Agreements, the contracts were unconscionable. Pl. Resp. at 7. Plaintiff's course of conduct with Defendants belies her position that the Enrollment Agreements were unconscionable. First, Plaintiff signed both the 2014 and 2015 Enrollment Agreements and admits that she discussed the terms of those agreements with Defendants' representatives.

OPINION & ORDER - 7

Sanders Decl. ¶¶ 3–4, 6. Second, Plaintiff was not forced to enter into any Enrollment Agreement with Defendants and could have chosen to initially pursue education elsewhere or could have transferred after the end of her enrollment in the Program. The Court finds that Plaintiff was neither oppressed nor surprised by the Enrollment Agreements and the contracts are not procedurally unconscionable.

**B.      *Substantive Unconscionability***

Alternatively, Plaintiff contends that the fee-splitting terms of the Enrollment Agreements will cause her to incur large arbitration fees. Pl. Resp. at 7–9. Plaintiff's position is based on a misstatement of the rules. Plaintiff relies on the general Commercial Rules of the American Arbitration Association ("AAA") in Portland, Oregon, to conclude that she will incur over $14,000 in filing fees through the course of arbitration. *Id.* at 7. However, Defendants point out that the arbitration provision is governed by AAA Consumer Rules which are a subset of the AAA Commercial Rules. Reply at 8. Under the AAA Consumer Rules, Plaintiff will be obligated to pay only a $200 initial filing fee and Defendants must pay all other costs and fees associated with the arbitration process. Young Reply Decl., Ex. D at 9–10, 33. Moreover, Defendants previously informed Plaintiff that they would pay arbitration costs and fees except for the $200 filing fee. Reply at 8. Accordingly, arbitration will not impose such a financial burden on Plaintiff as to render the Enrollment Agreements substantively unconscionable.

//

//

//

//

//

CONCLUSION

Defendants' Motion to Compel Arbitration 11 is GRANTED. This case is DISMISSED

pursuant to the parties' unambiguous agreement compelling arbitration.

Dated this _____ day of _____, 2017.

MARCO A. HERNÁNDEZ
United States District Judge